THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**EMI EQUITY MORTGAGE, INC.,**

    Appellant,

    v.

**STEWART TITLE GUARANTY COMPANY,**

    Appellee.

**Civil No. 17-1541 (ADC)**

## OPINION & ORDER

Before the Court is EMI Equity Mortgage, Inc.'s ("EMI") appeal from a District of Puerto Rico Bankruptcy Court's Order and Partial Judgment dismissing its third party complaint against Stewart Title Guaranty Company ("Stewart"). **ECF No. 1**. For the reasons stated herein, the Court **AFFIRMS IN PART AND REVERSES IN PART** the Bankruptcy Court's Partial Judgment.

**I.    Factual and Procedural Background**

On August 1, 2016, debtor Wilfredo Valdés Morales ("Valdés")—a bankruptcy petitioner under Chapter 13 of the Bankruptcy Code, **Case No. 11-04694 (BKT)**—filed a complaint against EMI, **Adversary Proceeding Case No. 16-00166**. **ECF No. 8-2** at 10-15. Valdés alleged that EMI had filed an amended claim on his bankruptcy proceeding, listing its debt as secured by a mortgage, and had collected 53 post-petition payments totaling $38,108.06. However, Valdés's

alleged that the debt was not secured because (1) the Property Registry had notified a defect in the mortgage that was never corrected and its entry had expired, and (2) EMI has collected an unsecured debt in violation of the bankruptcy stay. Accordingly, Valdés's complaint asked for compensatory damages, legal costs and fees, and punitive damages for EMI's continuous violation of the automatic bankruptcy stay, pursuant to 11 U.S.C. § 362.

On October 2, 2016, EMI answered the complaint and filed a third-party complaint against Stewart, who had issued a mortgage title insurance in favor of EMI for the mortgage loan issued to Valdés. **ECF No. 8-2** at 16-19. After admitting most of Valdés's factual allegations, EMI's third-party complaint simply alleged the following:

> 4. Stewart Title Guaranty Company (Stewart) is an Insurance Company with mailing address at PO BOX 2039 Houston Texas 77252-2029 who has authorized the Commissioner of Insurance B5 Street Tabonuco, Suite 2016, PMB 356, Guaynabo, Puerto Rico 00968-3029 to be served in its behalf.
>
> **FACTS IN SUPPORT OF CLAIM**
> 5. On August 1, 2016 Wilfredo Valdés Morales filed adversary 16-00166 against EMI.
> 6. If all of Debtor-Plaintiff allegations are true, Stewart has issued title insurance that covers losses surfaced by Valdés and EMI on account of the failure to record mortgage loan in the property registry.
> WHEREFORE it is respectfully requested that if the complaint is granted, then this third party claim is proper and Steward must reimburse Valdés its claim, and EMI the value of the loan, with such further relief as is deemed proper under the circumstances.

**ECF No. 8-2** at 18.

On November 3, 2016, Stewart moved to dismiss EMI's third party complaint under Federal Rule of Civil Procedure 12(b)(6). First, it argued that the complaint "consisted of vague

and general allegations" that failed to establish a plausible claim for relief because it did not detail the terms of the alleged title insurance or allege that Stewart had breached any of its terms. **ECF No. 5** at 4. Second, it argued that even if the complaint had alleged the terms of the policy and how Stewart had breached them, EMI's allegations and the policy terms show that EMI had never filed a claim and that, if it had filed one, Stewart would have denied it because EMI did not comply with its obligations under the insurance policy. *Id.*; *see* **ECF No. 8-2** at 35-36.

On December 23, 2016, EMI requested leave to amend its third party complaint, tendered an amended complaint, **ECF No. 8-3** at 1-2, and opposed Stewart's motion to dismiss, *Id.* at 8-10. The tendered amended complaint identified the insurance policy issued by Stewart in favor of EMI, provided more details regarding the property and mortgage at issue, and included the title insurance policy as an exhibit. The amended complaint alleged that the title insurance covers the losses suffered by Valdés and EMI, and that it constituted "a formal claim under the terms of [the] Title Insurance." *Id.* at 6.

In its opposition to the motion to dismiss, EMI argued that the tendered amended complaint addressed Stewart's argument that the first complaint was vague by including the insurance policy as an exhibit. **ECF No. 8-3** at 8-10. EMI's opposition to the motion to dismiss further argued that:

> [I]n [EMI's] view the Notice of October 4, 2016, provided with the Complaint of a claim filed August 2 or 63 days' [sic] later together with the Amended Complaint and the fact that the title Insurance at issue was provided to the Zapata Law Office on October 25, 2016 . . . should be sufficient notice under the insurance agreement.

> Specially when Stewart has not established this delay has affected their ability to correct the problem.

**ECF No. 8-3** at 9.

Stewart replied to EMI's opposition to the motion to dismiss and argued that granting EMI leave to amend the complaint would be an exercise in futility because the tendered amended complaint also failed to state a claim for which relief could be granted. **ECF No. 8-5** at 4-14. Consequently, Stewart argued that it would be within the Bankruptcy Court's sound discretion to deny EMI leave to file the amended complaint.

First, Stewart argued that the insurance policy is a title insurance with clear terms that do not cover the damages that EMI might have caused to third parties if it violated the bankruptcy stay and collected unsecured-debt payments from Valdés. *Id*. at 10.[1] Second, Stewart argued that according to the clear terms of the policy insurance, EMI's third-party complaint does not constitute a formal notice of claim, and EMI has not given a formal notice of claim or a proof of loss in the manner explicitly required by the insurance policy. *Id*. at 10-13. Third, Stewart argued that EMI's delay in notifying the claim prejudiced Stewart because the delay "severely affected [Stewart's] opportunities of taking actions in order to correct the insured mortgage," which, according to the terms of the policy, relieved Stewart from any responsibility towards EMI. *Id*. at 11.

---

[1] In support, Stewart argued that the Supreme Court of Puerto Rico has ruled that a mortgage title insurance does not cover the damages suffered by the homeowner or debtor if a defect in the mortgage or title prevents its enforceability. *Id*. at 10 (citing *Efraín Echandi Otero v. Stewart Title Guar. Co.*, 174 DPR 355, 375-77 (2008)).

In support of a finding that it suffered prejudice, Stewart argued that EMI was notified on February 3, 2011, that the mortgage had a defect that prevented its entry into the Property Registry, but—instead of complying with the insurance policy and notifying Stewart of the mortgage title's defect—EMI withdrew the deed from the Property Registry on March 31, 2011. Stewart asked the Bankruptcy Court to take judicial notice of an online search of the public records of the Puerto Rico Property Registry, which it attached as Exhibit A to its pleading. Stewart argued that the record search shows that EMI withdrew the mortgage from the Property Registry in March, 2011, and that the debtor filed for bankruptcy on May 31, 2011.[2] Thus, Stewart argued that EMI's failure to notify the defect in the mortgage title and its decision to withdraw the document from the Property Registry prejudiced Stewart and releases Stewart from any liability under the terms of the title insurance. **ECF No. 8-5** at 13.

On April 3, 2017, the Bankruptcy Court issued an Opinion and Order denying EMI leave to amend its third party claim and granting Stewart's motion to dismiss the third party complaint with prejudice, "for the reasons stated in Stewart's *Reply to Response to Motion to Dismiss and Opposition to Motion Requesting Leave to Amend Complaint*, whose findings of fact and conclusions of law the court adopt[ed] in their entirety." **ECF No. 8-7** at 10-11. On April 7, 2017,

---

[2] A copy of this exhibit is included in the appeal record before this Court. **ECF No. 8-5** at 16-20. However, the copy of the search is in Spanish, and neither party has submitted a certified translation of the exhibit. Furthermore, EMI's appeal does not question the Bankruptcy Court's decision to take judicial notice of the Spanish documents. *See Aja v. Fitzgerald (In re Aja)*, 441 B.R. 173, 178 (B.A.P. 1st Cir.2011) (arguments not raised before bankruptcy court are waived on appeal).

the Clerk of the U.S. Bankruptcy Court entered partial judgment dismissing EMI's third party complaint, with prejudice. *Id.* at 12**.**

EMI now appeals the dismissal of its third party complaint against Stewart and argues that the Bankruptcy Court abused its discretion when it denied leave to amend its complaint "without any judtifying [sic] reason." **ECF No. 3** at 11. Stewart filed a brief in response, **ECF No. 5**, to which EMI replied, **ECF No. 7**.

## II.     Standard of Review

On appeal from the bankruptcy court, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013; 28 U.S.C § 158.  District courts review a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law under de novo review. *Brandt v. Repco Printers (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107 (1st Cir. 1997). However, a bankruptcy court's decision to deny a party leave to amend a complaint is reviewed for abuse of discretion. *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citing *Noonan v. Rauh (In re Rauh)*, 119 F.3d 46, 52 n. 10 (1st Cir. 1997)). "Such an abuse may consist of, among other things, mistakes of law, or clearly erroneous findings of fact." *In re Lombardo*, 755 F.3d at 3 (citing *Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 98 (1st Cir. 2007); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 38 (1st Cir. 2005)).

"Under the rules governing adversary proceedings, the bankruptcy court should freely give a party leave to amend his complaint when justice so requires." *In re Lombardo*, 755 F.3d at 3 (citing Fed. R. Bankr.P. 7015; Fed.R.Civ.P. 15(a)(2)). "While the rules thus reflect a liberal amendment policy," the district court defers "to the bankruptcy court's denial of leave to amend if supported by an apparent, adequate reason." *In re Lombardo*, 755 F.3d at 3 (citing *Grant v. News Grp. Bos., Inc.*, 55 F.3d 1, 5 (1st Cir. 1995)). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

## III.   Discussion

EMI argues that the Bankruptcy Court abused its discretion because it denied leave to amend the third party complaint "without any ju[s]tifying reason." **ECF No. 3** at 11. However, the Bankruptcy Court's order denying EMI leave to amend clearly states that it was doing so for the reasons stated in Stewart's reply to EMI's opposition to the motion to dismiss. **ECF No. 8-7** at 10-11. Thus, the Bankruptcy Court denied EMI leave to amend because it concluded that granting EMI leave to amend would be an exercise in futility, as the proffered amended complaint did not state a claim under which relief could be granted. *See* **ECF No. 8-5** at 4-15.

Stewart's motion argued that the proffered amended complaint failed to state a claim upon which relief could be granted because: (1) the insurance policy does not cover the damages

that EMI allegedly caused Valdés if it collected an unsecured debt in violation of the bankruptcy stay, (2) EMI breached its obligations under the insurance policy because it failed to provide a formal notice of the claim or a proof of loss, as required by the insurance policy; and (3) EMI's failure to notify the claim prejudiced Stewart and, thus, liberated Stewart from its obligations under the insurance policy. **ECF No. 8-5** at 13. EMI's appeal thus asks the Court to review the Bankruptcy Court's conclusion that the tendered amended complaint fails to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move the Court to dismiss a complaint if it fails "to state a claim upon which relief can be granted." When evaluating a motion to dismiss under Rule 12(b)(6), the Court takes the complaint's well-pleaded facts as true, and draws all reasonable inferences in plaintiff's support. *See Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). The Court ask "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted." *Germanowski*, 854 F.3d at 71 (citing *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court engages in no fact finding because "it presumes that the facts are as properly alleged by plaintiffs and/or reflected in other properly considered records, with reasonable inferences drawn in plaintiff[']s favor." *Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (citations omitted). A district

court reviews de novo the Bankruptcy Court's reading of the complaint and associated records. *Id.*

EMI's first argument on appeal is that Stewart "misread the amended complaint" because the amended complaint "states with sufficient specificity that Stewart issued a title insurance for loss up to $117,082.00 for invaliding [sic] or unenforceability of the lien of the insured mortgage." EMI further argues that:

> The policy covers up to $117,082.00 in "losses and damages sustained by reason of lack of priority of the lien on the insured mortgage." . . . In summary, the amended complaint states that $117,082.00 is enough to cover [Valdés's] claim if proven correct not that the specific damages are covered. All this provided EMI can establish the loss of priority over the insurance mortgage.

**ECF No. 3** at 12.

Thus, EMI argues—in a conclusory manner—that the terms of the title insurance "leave[] little room for speculation" as to Stewart's liability, and that the Bankruptcy Court abused its discretion when it concluded that granting leave to amend the complaint would be an exercise in futility. **ECF No. 3** at 17. The relevant parts of the tendered amended complaint allege that: (1) Stewart issued a title insurance that covers the "losses surfaced by Valdés and EMI on account of the failure to record the mortgage loan in the property registry"; (2) the title insurance covers "the invalidating or unenforceability of the lien of the insured mortgage upon the Title"; and (3) "EMI cannot enforce its lien over [Valdés's] property." **ECF No. 8-3** at 55-56.

Stewart responds that the policy in question is a mortgage insurance that "covers [] any loss due to the invalidating or unenforceability of the insured mortgage, but the policy does not

cover [] damages that [EMI] may [have] caused to other parties or its debtors under the mortgage." **ECF No. 5** at 13. Thus, Stewart argues that the policy does not cover the damages that Valdés allegedly suffered as a result of EMI violating the bankruptcy stay for unsecured debts. *Id.*

The Court construes the insurance policy between EMI and Stewart according to the laws of Puerto Rico, which provide that

> "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." Absent an ambiguity, courts must interpret the insurance contract according to its plain meaning, as a whole, and in harmony with the general purposes of the policy. If the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties, but if the policy's language is cloudy, courts must construe the provisions against the insurer.

*Zurich Am. Ins. v. Lord Elec. Co. of P.R.*, 986 F.Supp.2d 104, 110–11 (D.P.R. 2013), *as corrected* (Dec. 20, 2013) (quoting P.R. Laws Ann. tit. 26, § 1125) (additional citations and internal quotation marks omitted).

Here, the clear terms of the insurance policy show that it does not cover the damages that EMI may have caused when it violated the bankruptcy stay and collected unsecured-debt payments from Valdés. Instead, it only covers the losses that EMI may have suffered because of the unenforceable mortgage. Thus, the Bankruptcy Court did not abuse its discretion when it dismissed EMI's claim and denied it leave to amend the complaint as it pertains to Stewart's liability for the damages EMI allegedly caused to Valdés. However, as discussed below, the Bankruptcy Court abused its discretion when it denied EMI leave to amend the complaint as to its claims regarding Stewart's potential liability for the invalidity of the mortgage.

A.      **Whether EMI's failure to provide formal notice prejudiced Stewart**

EMI's second argument on appeal is that amending the complaint would not have been an exercise in futility because several issues of fact should have precluded its dismissal under the Federal Rule of Civil Procedure 12(b)(6) standard. **ECF No. 3** at 18. The first fact allegedly in dispute is whether or not EMI gave adequate notice of its insurance claim. **ECF No. 3** at 17-19. The second fact that EMI disputes is whether the mortgage was withdrawn on March 31, 2011, and whether EMI was notified of the mortgage title's defects. **ECF No. 3** at 18. Finally, the third fact that EMI disputes is whether EMI's alleged failure to notify its insurance claim and provide proof of loss prejudiced Stewart. **ECF No. 3** at 18. The third factual dispute—whether Stewart was prejudiced by EMI's failure to notify the insurance claim—is decisive for this appeal.

EMI argues that Section 3 of the insurance policy states that "failure to notify [Stewart] shall in no case prejudice the rights of the insured under this policy unless [Stewart] shall be prejudiced by the failure and then only to the extent of the prejudice." **ECF No. 3** at 18 (quoting **ECF No. 8-4** at 6).[3] The insurance policy states:

> If prompt notice shall not be given to [Stewart], then as to the insured all liability of [Stewart] shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify [Stewart] shall in no

---

[3] Although Stewart has not raised the issue of whether EMI waived this argument by failing to reply to Stewart's opposition to the motion for leave to amend the third party complaint, the Court notes that EMI raised this argument in its opposition to Stewart's first motion to dismiss the third party complaint. *See* **ECF No. 8-3** at 14 ("Specially when Stewart has not established [that the delay in notifying the claim] has affected their ability to correct the problem.").

case prejudice the rights of any insured under this policy *unless* [*Stewart*] *shall be prejudiced by the failure and then only to the extent of the prejudice.*

Insurance Policy Section 3**, ECF No. 8-4** at 6 (emphasis added).

Furthermore, Section 5 requires that EMI provide Stewart with a proof of loss, but states, "*If* [*Stewart*] *is prejudiced* by the failure of the insured claimant to provide the required proof of loss or damage, [Stewart's] obligations to the insured under the policy shall terminate . . . ." Insurance Policy Section 5, **ECF No. 8-5** at 1 (emphasis added). Accordingly, EMI's failure to notify the claim and provide a proof of loss releases Stewart's liability only to the extent that said failure prejudiced Stewart.

Stewart argues that it was prejudiced when EMI failed to notify its claim because it prevented Stewart from correcting the defects in the mortgage title or mitigating the parties' potential losses. **ECF No. 5** at 25. Stewart claims that EMI was notified on February 3, 2011 of the defect in the mortgage and withdrew it from the Puerto Rico Property Registry on May 31, 2011. **ECF No. 5** at 24. However, the public search submitted in support only states that on February 3, 2011 a notification "was issued" and that on May 31, 2011, an individual identified as "Thomas Pagan" withdrew the document.[4] This does not show that the notice was sent to

---

[4] The Court notes that the exhibit submitted is in Spanish and there is no certified translation on the record. However, the "Jones Act requires that '[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico . . . be conducted in the English language.' 48 U.S.C. § 864. 'It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.'" *United States v. Roman-Huertas*, 848 F.3d 72, 75–76 (1st Cir. 2017) (quoting *United States v. Millán–Isaac*, 749 F.3d 57, 64 (1st Cir. 2014)).

EMI, that EMI received the notice, or that Thomas Pagan was an agent of EMI. It also does not show how EMI's alleged failure to notify the claim or provide proof of loss prejudiced Stewart.

The Bankruptcy Court's Opinion and Order denying EMI leave to amend the complaint states that it adopted in its entirety the facts stated in Stewart's pleadings opposing EMI's request to amend the complaint. In doing so, the Bankruptcy Court tacitly evaluated EMI's tendered amended complaint under the standard applicable to summary judgment, instead of the appropriate standard under Rule 12(b)(6). In order to conclude that granting EMI leave to amend the complaint would be an exercise in futility, the Bankruptcy Court was bound to interpret the facts adequately alleged in the complaint in the light most favorable to plaintiff. *See Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (In adjudicating a motion under 12(b)(6), courts ask "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted.").

If the Bankruptcy Court wanted to consider evidence outside the pleadings and make factual findings in order to dismiss EMI's complaint, it should have given the parties an opportunity to present materials pertinent to the motion. *See* Fed. R. Civ. P. 12(d); *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 73–74 (1st Cir. 2014) (conversion to a summary judgment motion was premature, and that the failure to expressly convert the motion to dismiss was not harmless, when party contested the relied-upon evidence on appeal).

**IV.     Conclusion**

In light of the above, the Court **AFFIRMS IN PART AND REVERSES IN PART** the Bankruptcy Court's ruling. The Bankruptcy Court did not err in dismissing EMI's claim that Stewart is liable for the damages it may have caused debtor Valdés if EMI violated the Bankruptcy Court's stay. However, the Court did abuse its discretion when it denied EMI leave to amend the complaint as an exercise in futility. The case is **REMANDED** to the Bankruptcy Court for proceedings consistent with this ruling.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2018.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**